ORANGE,
*March,*
.1841.

Thayer
*v.*
Hutchinson&
Kidder.

---

ZENAS THAYER, JR., *v.* JOHN HUTCHINSON and IRA KIDDER.

The receipt-man of property attached, who has the actual possession of it for safe keeping, may maintain trover for it against a third person who takes it out of his possession, having no color of right.

TROVER for fifty-six sheep and one horse.

Plea, not guilty, with notice that the defendants took the property as belonging to James H. Brackett, on a writ of attachment against him. Issue was joined to the country.

On the trial below, the plaintiff gave evidence tending to prove that said sheep and horse, with other property belonging to said Brackett, were attached on three writs against Brackett, by John Woodbury, a deputized person, who delivered the property in question to the plaintiff for safe-keeping, and the plaintiff gave his receipt therefor; that one Kimball, a deputy sheriff, having a writ for service against said Brackett, informed said Woodbury that he had attached thereon the same property, subject to the previous attachments made by Woodbury, and also so informed the plaintiff, and requested the plaintiff to keep the property for him, which the plaintiff agreed to do; that said writs so served by said Woodbury and Kimball, were duly returned; that, afterwards, the defendant, Kidder, who was also a deputy sheriff, took the same sheep and horse, as he stated, on a writ of attachment against said Brackett, and the other defendant, Hutchinson, assisted him in driving them away. Upon this testimony the county court charged the jury that the plaintiff was not entitled to recover, and the jury returned a verdict for the defendants. The plaintiff excepted to the charge of the county court.

*E. Weston* and *W. Hebard*, for plaintiff.

The plaintiff contends that the *charge* of the county court was incorrect, and that, from the evidence before the court and jury, the plaintiff was entitled to recover.

The case shows that Woodbury, who held plaintiff's receipt for the property in question, was a deputized officer, entirely disconnected from and in no way responsible to the sheriff.

The plaintiff, as keeper of the property, had a beneficial interest in the property, having a right to charge for the keeping. 3 Stark. Ev. 1481. *Poole* v. *Symonds*, 1 N. H. R. 289. *Odiorne* v. *Colley*, 2 N. H. R. 70. *Bigelow* v. *Huntley*, 8 Vt. R. 151.

*W. Nutting* and *L. B. Peck*, for defendants.

1. A receiptor of property attached can in no case maintain an action to recover the property, even as against a wrongdoer. He is a naked bailee, having no interest in the property ; a mere servant of the sheriff, and the latter can alone bring an action for the property taken from the custody of the receiptor. *Ludden* v. *Leavitt*, 9 Mass. R. 104. *Warner* v. *Leland*, Id. 265. *Whittier* v. *Smith et al*, 11 Id. 211. *Bond* v. *Paddleford*, 13 Id. 394. *Commonwealth* v. *Morse*, 14 Mass. R. 217. *Brownell* v. *Manchester et al.*, 1 Pick. 232. *Miller* v. *Barker et al.*, 6 Johns. R. 195. *Dillenback* v. *Jerome et al.*, 7 Cowen, 294. *The People* v. *Norton*, 8 Id. 137.

2. The action cannot be maintained in this case, as the property was taken by a public officer, against whom the plaintiff had no right to withhold it. If the plaintiff had been sued upon his receipt, it would be a good defence that the property was taken from him by one of the defendants, who was a deputy sheriff, although he produced no process, and, in fact, had none, inasmuch as he claimed to take it by virtue of a writ of attachment against the debtor, the owner of the property.

The opinion of the court was delivered by

BENNETT, J.—The opinion and charge of the county court, in this case, that the plaintiff was not entitled to recover, no doubt proceeded upon the ground that the plaintiff had no such in-

ORANGE,
*March*,
1841.

Thayer
*v.*
Hutchinson&
Kidder.

ORANGE,
March,
1841.

Thayer
v.
Hutchinson &
Kidder.

terest in the property in question, as would enable him to maintain trover. It is true that, in Massachusetts, it has been held that the receiptor of chattels attached has but a mere *naked possession* of them, as the servant of the officer, without any legal interest, and that, therefore, he cannot maintain any action against any one who shall take them out of his possession. *Ludden v. Leavitt*, 9 Mass. R. 104. *Warren v. Leland*, Id. 265. *Commonwealth v. Morse*, 14 Mass. 217. The same principle has been recognized in other cases in that state. In *Dillenback v. Jerome et al.*, 7 Cowen, 294, the supreme court of New York hold the same doctrine, and fully indorse the Massachusetts cases. See also *Barker v. Miller*, 6 Johns. 196, and *People v. Norton*, 8 Cowen, 137. The principle of these cases is directly opposed to the present action, and they are the opinions of learned and highly respectable courts. Still we cannot accede to their soundness. The position that a mere *depositary*, or bailee for safe keeping, has no special property in the deposite, but a custody only, is certainly a doctrine which is inculcated by the most respectable authorities. In addition to the foregoing, I might refer to *Hartop v. Hoare*, 3 Atkyns, 44. *Southcole's case*, 4 Coke's R. 84. *Waterman v. Robinson*, 5 Mass. R. 304. *Brownell v. Manchester*, 1 Pick. 232. Still, it is often laid down, by elementary writers, that a *depositary* has a *special* property in the deposite. Blackstone, in his Commentaries, 2d vol. 452, lays it down that the general bailee may vindicate, in his own right, his *possessory interest* against any stranger or third person. Sir William Jones, in his Law of Bailments, says, "Every bailee has a *temporary, qualified property* in the things of which possession is delivered to him, and has therefore a possessory action against a stranger who may damage or purloin them." A case is cited from the Year Book, 21 Hen. VII, in which Justice Fineax is reported to have said, "In this case the bailee has a property in the thing, against every stranger, for he is chargeable to the bailor, and for this reason he shall recover against a stranger who takes the goods out of his possession." The character of the bailment does not distinctly appear in the report; but, from the statement of the pleadings, it is to be inferred that the bailee was a mere *depositary*. Other cases are to be found in the books, recognizing

the same doctrine. But, be this as it may, I do not think it is important, in this case, to determine whether the plaintiff had strictly a *special property* in the articles in question, or not. He is answerable over to the officer for the property, and the extent of his responsibility may be immaterial; and he ought not to be chargeable without having the means of redress. The plaintiff had the lawful possession of the chattels, and whether this was accompanied with a special interest or property in them, or not, it was sufficient to enable the possessor to maintain trover or trespass against any wrongdoer who violates that possession. *Fisher* v. *Cobb*, 6 Vt. R. 624. The finder of a jewel has such a title to it as will enable him to keep the possession against all persons but the rightful owner, and he may maintain trover for it. *Armory* v. *Delamirie*, 1 Strange, 505. *Sutton* v. *Buck*, 2 Taunton, 203, 209, is to the same effect. Lawrence, J., in the latter case, says, " There is enough of property in this plaintiff to enable him to maintain trover against a wrongdoer ;" and Chambre, J., says, " The plaintiff has possession under the rightful owner, and that is sufficient against a person having no color of right ;" and he says, " Even a general bailment, only, for the benefit of the rightful owner, will suffice." *Burton* v. *Hughes*, 2 Bingham, 173, and *Creighton* v. *Seppings*, 1 Barn. & Adolp.,241,are to the same effect. But it does not follow that because a depositary or bailee for safe keeping, who has the actual possession of a chattel, can maintain trover, as well as trespass, against a wrongdoer, who disturbs his possession, he must therefore have a special property in the chattel. In *Waterman* v. *Robinson*, 5 Mass. R. 304, which was replevin, Parsons, Ch. J., in giving the opinion of the court, expressly states that, as the plaintiff had merely the *care of the goods for safe keeping, and no special property in them*, he could not maintain replevin, which is founded in property either general or special, but might maintain trespass or trover, if his possession was violated. It is generally said that a sheriff, who has seized goods on an attachment, or execution, can maintain trover for them on the ground that he has a *special* property in them. In *Giles* v. *Grover*,6 Bligh, R. 277, in the House of Lords, this subject is fully examined. Lord Tenterden, in that case, p. 452, says, " These actions," that is, actions by sheriffs, " are maintainable upon

ORANGE,<br>*March*,<br>1841.<br><br>Thayer<br>*v.*<br>Hutchinson&<br>Kidder.

ORANGE,
March,
1841.

Thayer
v.
Hutchinson&
Kidder.
a ground perfectly distinct from the right of property. They are maintainable upon the ground of possession;" and he adds, "Any man in the possession of goods, as bailee, or otherwise, may, in his own name, maintain an action." Lord Ch. J. Tindal, in the same case, says, in substance, "He who has the legal possession of goods, though not the property, may maintain trover against a wrongdoer, without color of legal title, who cannot dispute the title of the party in possession." And he adds, "It would be a better definition of the sheriff's relation to these goods, to say, ' he has them in his custody under a power to sell them, rather than an *actual interest or property in them.*' They are *in custodia legis*, a phrase which plainly distinguishes a mere custody and guardianship of the goods, from a property in them." Several of the other judges gave the same explanation. Justice Taunton added, " The sheriff, under the writ, has a mere power to sell, without any interest vested in him, except that which any bailee, who is answerable over, has for his own protection." If this may be termed an interest, or a special property in the chattel, it is like the interest in the receiptman. Both are founded upon a liability over to others. It is clear there is no beneficial interest. When we speak of a special property in a chattel, we usually mean some right therein distinct and subordinate to the general owner, as in the case of a pledge. If, by a special property, we mean a subordinate right to control the chattel, arising out of a lawful possession of it, accompanied with a liability over, then it is clear the mere depositary, or bailee for safe keeping, and the sheriff, who has it *in custodia legis*, have such property. The defendants, in the case before the court, stand as strangers, and have no color of right.

The fact, that Kidder stated, when the defendants drove away the property, that he took it upon an attachment against Bracket, amounted to nothing. No process was shown; none given in evidence or offered on the trial. The defendants, then, must stand, not only as strangers, but even without any color of right. If, then, we were even to hold, as in Massachusetts and New York, that the receipt-man had no property whatever in the chattels, for which this action was brought, but only a mere naked custody, still, his *possession* and *responsibility over* to the officer, who

ORANGE,
March,
1841.

Thayer
v.
Hutchinson &
Kidder.

delivered them to him, must furnish sufficient title and just right for him to recover, as we think, against these defendants. Without this, the plaintiff may be charged for not returning the chattels to the officer, and yet be left remediless for the very injury, which may put it out of *his power* to return them. Though it may be true that the officer who served the process might have maintained the action in his own name, still, it does not follow that he *alone* can have the action. *Chancellor Kent*, in his commentaries, vol. 2, p. 585, 3d edition, says " notwithstanding all the nice criticism to the contrary, every bailee in lawful possession of the subject of the bailment, may justly be considered as having a *special* or *qualified property* in it, and as he is responsible to the bailor in a greater or less degree for the custody of it, he, as well as the bailor, may have an action against a third person for an injury to the chattel." See also 2 Kent's Com. 568. Bac. Abridg. Bailment, *D.* *Roberts* v. *Wyatt*, 2 Taunt. 268. *Rooth* v. *Wilson*, 1 B. and Ald. 59. *Addison* v. *Round*, 2 Adol. and Ellis, 799, 804. *Nichols* v. *Bastard*, 2 Cromp. Mees. and Rosc. R. 659, 660, 661. In the case of *Burroughs v. Stoddard*, 3 Conn. R. 160, it was expressly held that the receiptor of goods attached, who had put them into the actual possession of a third person to take the charge of them, might maintain trespass, even against a person who had attached the goods as the property of the same debtor. Such third person was regarded as the mere servant of the receiptor. This same question has received very full consideration by the supreme court of New Hampshire, in the case of *Poole* v. *Symonds*, 1 N. H. R. 290, where it is held that the receiptor may well have the action. The defendant, another deputy sheriff, in that case, too, had attached the property for another creditor as belonging to the same debtor, and was not, of course, without some color of right. The court say that the receiptor acquired a special property in the goods, subordinate to and consistent with the special property of the officer; and that it is not at all inconsistent that two persons should severally have a special property in the chattel, at one and the same time.

We have been led to a more full examination of this question, in consequence of the opposing decisions in Massachusetts and New-York, than we should otherwise have

thought necessary. We cannot, however, subscribe to the correctness of their doctrine ; and we think, upon well established principles, the plaintiff had, at least, in the language of Sir William Blackstone, "such *possessory interest,*" in the chattels in question, as was sufficient to entitle him to maintain this action.

The judgment or the county court must therefore be reversed, and the case remanded for a new trial.